# CHARLESTON.

Braude & McDonnell, Inc. *v.* Isadore Cohen Company.

Submitted February 15, 1921.  Decided February 22, 1921.

1. Evidence—*Parol Evidence Admissible Only When Contract Complete on Face.*

   Generally a written contract must appear on its face to be incomplete in order to permit parol evidence of additional terms not embodied therein. (p. 768).

2. Same—*Written Contract Presumed to Contain the Whole Agreement.*

   Though no written contract, which does not in terms state that it contains the whole agreement, precludes the possible

supposition of additional parol clauses not inconsistent there-
with, yet if, upon inspection and study of the writing, it ap-
pears to contain the full engagement of the parties and to de-
fine the object and measure the extent of such engagement,
the presumption is that it contains the whole of the agree-
ment, and this presumption generally is conclusive. (p. 769).

3.   SALES—*Acceptance by Buyer of Bill of Sale Binds Without Sig-
     nature.*

Acceptance by the buyer of an invoice or bill of sale of
goods from the seller, which admittedly purports to be a con-
tract between them, indicates his assent to its terms, despite
the absence of the buyer's signature. (p. 768).

4.   EVIDENCE—*Parol Evidence to Show Return Privilege Held
     Admissible.*

An invoice or bill of sale, complete on its face, which re-
cites an absolute sale of goods without condition or restric-
tion, defines the terms thereof, some of which are inserted at
the buyer's suggestion, and is accepted by the latter with
full knowledge of its provisions, is within the rule prohibiting
modification of a written agreement by parol evidence, and
the purchaser, in defense of an action by the seller for the
price of the goods, will not be permitted to show an alleged
contemporaneous oral agreement between the parties by which
the buyer was accorded the privilege of returning such of
the goods as he was unable to sell. (p. 770).

5.   TRIAL—*Demurrer to Evidence Not Waiver of Inadmissibility of
     Evidence; Inadmissible Evidence to be Ignored When Pass-
     ing on Demurrer to Evidence.*

A demurrer to the evidence does not have the effect of waiv-
ing the demurrant's objections to evidence which the demur-
ree was permitted to introduce over his protest; and in pass-
ing upon such demurrer the court should ignore and exclude
from consideration so much of the challenged testimony as is
legally inadmissable.   (p. 771).

Error to Circuit Court, Mercer County.

Action by Braude & McDonnell, Incorporated, against the
Isadore Cohen Company. Judgment for defendant after plain-
tiff's demurrer to the evidence was overruled, and plaintiff brings
error.

*Reversed, judgment for plaintiff.*

87 W. Va.

*Arthur F. Kingdon,* for plaintiff in error.
*Sanders & Crockett* and *A. G. Fox,* for defendant in error.

LYNCH, JUDGE:

This writ requires the review of a judgment for defendant upon a motion for judgment by plaintiff, based upon a sale and delivery of diamonds by it to defendant September 5, 1919.   The transaction began and terminated on the same day, ending with the actual transfer by the seller of the possession of the property sold.   After the parties had introduced their proof, plaintiff demurred to defendant's evidence, and, having considered the questions arising upon the demurrer, the court overruled it and entered the judgment complained of.   In order better to comprehend the real gist of the controversy, it is necessary to set out the original itemized invoice or bill of sale of the goods sold and delivered and the terms of the sale and delivery evidenced by it, as they appear upon the face of the instrument sued on, the identity and validity of which counsel concede by a stipulation to that effect.   The invoice follows:

"All claims must be made immediately after receipt of goods.
BRAUDE & McDONNELL, Inc.
Manufacturing Jewelers
High Grade Diamond Mountings        No. 3840,
Gold and Diamond Jewelry
65 Nassau Street

New York, Sept. 5, 1919.

SOLD TO Isadore Cohen Co.
Bluefield, W. Va.
Terms: Net Jan. 1st.               Salesman, F. H. Mounts.
(Then follows itemized description of goods sold and prices, aggregating, net, $1849.60).
Terms Net.   Settlement to be made Jan. 1, 1920—all or part cash—balance to be divided into eight equal notes—thirty days apart—first note to be due Feb. 5th.

F. H. Mounts."

There is no question as to the complete sufficiency of the proof to establish every item of the account and the consider-

ation agreed to be paid. The character of the transaction alone is questioned, that is, whether it was an actual sale accompanied by an unconditional transfer of the title concomitant with the delivery of the goods sold, according to the contention of the plaintiff; or a sale of the goods to defendant coupled with an authority on his part to return to plaintiff such items of the property as he failed or was unable to sell within a reasonable time after the date of the delivery, technically an agreement of "sale or return" (Williston on Sales, §§ 270 et seq; 24 R. C. L., Sales, § 720 et seq.), as defendant contends. It was upon the latter theory that defendant undertook to reship the goods by express to plaintiff soon after January 5, 1920, a shipment which plaintiff refused to accept and did not accept.

As the demurrer challenges the sufficiency of the proof to entitle defendant to the judgment in its favor, considered in the light of all the facts and circumstances proved by plaintiff and not inconsistent with those likewise established by the latter, it is permissible and advisable to let Isadore Cohen, the defendant's president, general manager, and also its "buying and financing and selling" agent, for which purpose he devoted all his "working time to the management of the store and selling goods in it," repeat in his own language his interpretation of what occurred between him and Mounts, the agent and representative of the plaintiff, at the time of the sale.

Cohen says: "Mr. Mounts came in the store on the day that this invoice was made out and offered—came in and asked me if he could display his goods, and I told him he could, and he opened up his goods there on the case, and after I looked at them I wasn't very anxious to buy, and he was a very good salesman, and he talked about his goods, and said that I bought from him when he was with the other concern, and that he was representing a good concern, and he thought it would be to our advantage to buy his goods, and he was very anxious to sell them to me, and I told him that I didn't need them so badly, but I would try it. As a matter of fact, he has two books that he carries with him; one is the straight invoices, and one is memorandum, con-

signment, and he offered at first to leave the goods on consign-
ment if I wanted it, but I didn't want him to leave them on
consignment for the reason that in case the goods was sold,
they could make their own terms, so I told him if he would
leave the goods, I will take them, and if I sell any of them,
I shall settle for it the way he has outlined on his contract
here, and if I can't sell it, I can return it.   We had them in
the safe during the months of October, November and Decem-
ber, kept them all in the safe, and when a customer came in
that wanted to see the diamonds, we took the diamonds out
of the safe—and we haven't succeeded in selling a great many,
so about the first of the year we have returned all except the
one, for which we enclosed the check in payment of the one
we have sold, and asked them to give us credit for the differ-
ence."

For the reasons stated in the above excerpt defendant re-
fused to accept the rings on consignment, but took them on
invoice with provision for deferred payment and, as he testi-
fies, with an oral understanding permitting return of the goods
to plaintiff under the conditions heretofore stated.   The only
question for consideration is whether testimony relating to the
alleged oral understanding is admissible to vary the terms
of the invoice, which purports on its face to represent an un-
equivocal sale without conditions or qualifications of any kind
or character.

Considered in the light of all the facts and circumstances
surrounding the transaction, including the language used and
terms prescribed and the immediate transfer of the possession
of the property, the invoice has all the distinguishing features
of a written contract of sale except the signature of the pur-
chaser.   Immediately preceding the specification of the prop-
erty are the words, "Sold to Isadore Cohen, Bluefield, W. Va.
Terms:   Net Jan. 1st. · Salesman, F. H. Mounts;" and fol-
lowing it are the words, "Terms Net.   Settlement to be made
Jan. 1, 1920—all or part cash—balance to be divided into
eight equal notes—thirty days apart—first note to be due
Feb. 5th."   That the provision as to the terms of payment was
incorporated in the invoice at defendant's suggestion, for the
purpose of having written evidence of the agreement in the

form of a contract, is admitted by him. In response to the question, "Did you write this memorandum down there at the time he gave it to you?" he replied: "We agreed upon it but he wrote it. * * * The reason this memorandum is put in there is because we agreed upon—if we cannot sell it, we can return it, and if we sell some of the goods, we will have the right to settle it in this way. * * * I made him put on the invoice the terms, if I didn't sell any of the goods, I can return them; if I did sell it, I can have these terms, which I can take advantage of."

The agent Mounts denies that the privilege of return was accorded defendant under any circumstances, and testifies that the sale was unequivocal and unrestricted by conditions, and that he had no authority to agree to such an arrangement with customers to whom he sold goods. It is unnecessary to enter into any discussion concerning Mount's authority to consent to a return of the goods, except to say that even though he was expressly forbidden to do such a thing, yet his implied authority may have been such as to bind his principal in case he had undertaken to do so. *George De Witt Shoe Co.* v. *Adkins,* 83 W. Va. 267.

According to the testimony of defendant himself, the parties prepared the invoice so as to express the terms agreed upon between them, and defendant accepted it with that understanding. He was fully aware of all that it contained. Nor was his signature necessary in order to bind him. The acceptance of the invoice was sufficient, and doubly so as it contained the terms which he had insisted upon. "The acceptance of a paper which purports to be a contract sufficiently indicates an assent to its terms, whatever they may be." 1 Williston on Contracts, § 90a. So one may, under certain circumstances, be bound by the terms and conditions contained on telegraph blanks, bills of lading, tickets, or warehouse receipts, by printed notices on letter heads, and by notices on merchandise. 1 Williston on Contracts, §§ 90b-90e. See also *West Virginia, etc. R. Co.* v. *McIntire,* 44 W. Va. 210.

Since defendant in effect admits the validity of the contract between the parties as to the terms of payment therein expressed, can he now insist, and by parol testimony attempt

to prove, that the invoice did not state all that was agreed upon between Mounts and him, but that there was a contemporaneous oral agreement completely altering and changing the apparent finality of the sale? The parol evidence rule does not apply to every contract of which there is written evidence, but only to such as appear on their face to be complete and to embody in one instrument all the essential terms of the agreement. If the parties expressly state, in terms, that the writing shall be but a partial integration of the agreement, or if the contract on its face purports to omit some important feature, then parol evidence may be admitted to explain the omission and show what the full agreement was. Generally, however, a contract must appear on its face to be incomplete in order to permit parol evidence of such additional terms. 2 Williston on Contracts, § 633; *Griffin* v. *Runnion,* 74 W. Va. 641; *Petty* v. *United Fuel Gas. Co.,* 76 W. Va. 268; *Manufacturing Co.* v. *Smith,* 79 W. Va. 736.

But defendant contends that from a reading of the invoice or bill of sale it is not a necessary inference either that it is a statement of the entire agreement or that it is not, and therefore that parol evidence is admissible to show which is the fact. In response to such contention, Professor Williston says (2 Williston on Contracts, § 633) : "The difficulty with such a principle lies in its application. No written contract which does not in terms state that it contains the whole agreement (and few do so provide, though it would generally be a wise provision) precludes the possible supposition of additional parol clauses, not inconsistent with the writing. The matter has been well summed up by Finch, J., in *Eighmie* v. *Taylor,* 98 N. Y. 288, 294: 'If we may go outside of the instrument to prove that there was a stipulation not contained in it, and so that only part of the contract was put in writing, and then, because of that fact, enforce the oral stipulation, there will be little of value left in the rule itself. The writings which are protected from the effect of contemporaneous oral stipulations are those containing the terms of a contract between the parties, and designed to be the repository and evidence of their final intentions. If upon inspection and study of the writing, read, it may be, in the light of surrounding

circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, it constitutes the contract between them, and is presumed to contain the whole of that contract.' " Of course, the doctrine that an absolute written transfer may be proved by parol to be a mortgage is an exception to the above stated rule, well recognized by courts and depending upon considerations generally different from those affecting ordinary agreements. 2 Williston on Contracts, § 635.

The case of *R. M. Davis Photo Stock Co.* v. *Photo Jewelry Mfg. Co.,* 47 Colo. 68, is applicable to the facts before us. Plaintiff, having sold certain goods to defendant, sent an invoice or bill of sale in the following terms: "Photo Jewelry Mfg. Co. Chicago, 5-27-05. Sold R. M. Davis Ph. Stock Co., Denver, Colo. Order No. 10339. Terms, net 30 da. Shipped by A. T. & S. Fe. Net cash. Book * * * Chicago or New York Exchange. 1639 Champa;" followed by a description of the goods with their prices. The defendant buyer sought to introduce parol testimony to show that it had purchased the goods with the express understanding that if it should be unable to sell or dispose of them, it might return them to plaintiff to be exchanged for other goods. But the court refused to permit this to be done, because the bill on its face showed a complete legal obligation. See also monographic note following report of this case in 19 Ann. Cas. 541.

The invoice or bill of sale with which we are dealing is complete in every aspect and purports to embody or represent a sale without condition or restriction. If defendant desired to incorporate a stipulation securing to it the right of return, it could and should have done so at the time the provision was added relating to terms of payment. Indeed, it is difficult to understand how defendant, who exercised such care with regard to the one, could have overlooked the other. Parol testimony, flatly contradicted by plaintiff, cannot be admitted to add to or modify in this manner the invoice contract accepted by the defendant. "In so far as a bill of sale partakes of the nature of a receipt or is simply declaratory of a fact, it may be explained or perhaps contradicted; but to the extent that it ex-

presses the contract of the parties and defines their rights and liabilities, it is subject to the same rule as other written contracts, and precludes the admission of parol or extrinsic evidence." 22 C. J. (Evidence) § 1451.

As under these authorities the defendant's evidence was incompetent in that its effect was to vary the explicit terms of the invoice or contract of sale, the court should have sustained plaintiff's motion, timely made, to exclude it from consideration by the jury and ignored it as establishing no fact material upon the issues between the parties. Its incompetency nullifies and deprives it of all force as proof, especially when an effort was made to eliminate it from the record. As the court and not the jury passed upon the merits of the controversy, the court properly could and should have disregarded it in dealing with the demurrer. This it may have done for aught we know to the contrary. But if it did, the court erred in adjudging the law to be in favor of the defendant. And if it did not ignore and disregard the incompetent proof, this court will do so, because the demurrer does not have the effect of waiving or operating as a waiver of the objection and exception to the incompetency of the evidence. *Dishazer* v. *Maitland,* 12 Leigh 524; *Muhleman* v. *National Ins. Co.,* 6 W. Va. 508, 514; *N. & W. R. Co.* v. *Warden,* 117 Va. 801, 804; *Gillett* v. *Burlington Ins. Co.,* 53 Kan. 108.

For these reasons our order will reverse the judgment, sustain the demurrer to the evidence, and enter judgment here for $1,849.60 in favor of the plaintiff, with interest thereon from January 1, 1920.

*Reversed, judgment for plaintiff.*